IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S.
2010 SEP 15 AM 11: 32
CLERK
SO. DIST. OF GA.

| | | |
|---|---|---|
| ALPHONZO GREEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 110-021 |
| | ) | (Formerly CR 108-054) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

The captioned case is before the Court on Petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

## I. BACKGROUND

### A. Procedural History

The federal grand jury charged Petitioner with one count of possession with intent to distribute a quantity of cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1) and ((b)(1)(C)); one count of possession of an unregistered firearm, in violation of 26 U.S.C. § § 5841, 5861(d), and 5871; and one count of possession of counterfeit Federal Reserve Notes, in violation of 18 U.S.C. § 472. United States v. Green, Criminal Case No. 108-054, doc. no. 1 (S.D. Ga. Apr. 3, 2008) (hereinafter "CR 108-054"). A superseding indictment

in May 2008 altered the drug charge to allege possession with intent to distribute both powder and crack cocaine.[1] Id., doc. no. 5.

Petitioner retained attorney Jacque Hawk to represent him (id., doc. no. 11), and pursuant to a negotiated plea agreement, Petitioner pled guilty to one count of possession with intent to distribute five or more grams of cocaine base and a quantity of cocaine hydrochloride, in violation of 21 U.S.C. § 841.[2] Id., doc. nos. 41-43. At the Rule 11 colloquy, Petitioner informed the Honorable J. Randal Hall, United States District Judge, that he had enough time to discuss and prepare for his case with Mr. Hawk. Id., doc. no. 60, pp. 10-11 (hereinafter "Rule 11 Tr."). Furthermore, Petitioner informed Judge Hall that he was satisfied with Mr. Hawk's preparation and his handling of Petitioner's case. Id. at 11. Judge Hall also asked Petitioner if anyone had promised him, represented to him, or otherwise told him a specific sentence that he would receive? Petitioner responded, "No, Sir." Id. at 16.

Judge Hall then proceeded to advise Petitioner of the charges in the superceding indictment to which he was pleading guilty and also to address the maximum statutory

---

[1]When Petitioner was arrested, a search of his residence ensued, and cocaine, electronic scales, a number of firearms including an unregistered sawed-off shotgun, body armor, counterfeit $100 bills, and approximately $1,700 in real cash, were discovered. PSI ¶¶ 9-10.

[2]The charge of possession of an unregistered firearm was dismissed in exchange for Petitioner's guilty plea. CR 108-054, doc. nos. 41-43.

penalty that might be imposed in the event of Petitioner's conviction.[3]  Id. at 11-15.

Additionally, Judge Hall asked Petitioner whether he understood that it was possible that, based upon the factors that he had discussed, that he could impose a penalty that was below or above the Sentencing Guideline range?  Petitioner responded, "Yes, Sir."  Id. at 15. Following this, Judge Hall summarized the substance of Petitioner's plea agreement. Id. at 16-18.  Judge Hall explained that Petitioner agreed to waive his right to a direct appeal, as well as any post-conviction collateral attack on his sentence.[4]  Id. at 18.  In particular, Judge Hall explained that Petitioner agreed to waive the right to appeal his sentence unless the sentence imposed was "higher than the high end of the [S]entencing [G]uideline range."  Id. Judge Hall further explained that if the sentence exceeded the Sentencing Guideline range then Petitioner would retain his right to appeal, but he would not get back the post-conviction

---

[3]Judge Hall explained:

> Now, the maximum penalties by statute that this Court can impose upon you for conviction of Count One is a penalty of not less than 5 or more than 40 years imprisonment, a fine of not more than []2 million [dollars], a term of supervised release of at least four years, and a $100 special assessment.

Rule 11 Tr., p. 13.

[4]The plea agreement, which Petitioner confirmed he had read and reviewed with counsel prior to signing (Rule 11 Tr., p. 17), spelled out that Petitioner was waiving:

> the right to appeal the conviction and sentence and the right to collaterally attack the sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of his sentence if it exceeds the statutory maximum; and the defendant may file a direct appeal of his sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court.

CR 108-054, doc. no. 42, pp. 3-4.

collateral appeal right that was waived by the plea agreement. Id. After summarizing the plea agreement, Judge Hall asked Petitioner if the summary was in accordance with Petitioner's understanding of the plea agreement, and Petitioner responded, "Yes, Sir." Id. at 17.

Next, Mike Marbert, a Special Agent with the Drug Enforcement Administration, testified to the factual basis for Petitioner's guilty plea. Id. at 20-23. Once Special Agent Marbert had concluded his testimony, Judge Hall asked Petitioner if he had any disagreement with the testimony. Id. at 24. Petitioner responded that he did not. Id. at 7.

After Petitioner's guilty plea was entered, the Probation Officer then prepared a Presentence Investigation Report ("PSI").[5] On February 11, 2009, Judge Hall conducted a sentencing hearing and upwardly departed from the advisory Sentencing Guidelines and sentenced Petitioner to 84 months of imprisonment and 5 years of supervised release. Id., doc. no. 49. Judgment was entered on February 12, 2009. Id. Neither the government nor Petitioner objected at sentencing to the facts set forth in the PSI. Petitioner did not file a direct appeal, even though he would have been entitled to do so given the upward departure of six months on his sentence. He did, however, timely-file the instant § 2255 motion. (Doc. no. 1.)

---

[5]According to Petitioner's PSI, his total offense level under the United States Sentencing Guidelines (U.S.S.G.) was 25, calculated as follows:

| | | |
|---|---|---|
| Base offense level | 26 | U.S.S.G. § 2D1.1(c)(6) |
| Possession of firearm | +2 | U.S.S.G. § 2D1.1(b)(1) |
| Acceptance of responsibility | -3 | U.S.S.G. § 3E1.1 |
| Total offense level | 25. | |

PSI ¶¶ 17, 18, 23, 26.

**B.    Issues Raised**

Petitioner contends that his counsel was ineffective for:  (a) failing to properly explain the significance of the appeal waiver provision of his plea agreement; (b) failing to explain the possibility that dismissed conduct could be used against him at sentencing; (c) failing to explain that he might receive a sentence outside the applicable Sentencing Guidelines range; (d) wrongly advising him that he would receive no enhancements to his base offense level under the advisory Sentencing Guidelines, (e) wrongly advising him that he would receive a sentence at the low end of the Sentencing Guidelines range; (f) failing to follow through with objections at sentencing to the application of the two-level firearm enhancement, which would have been based on dismissed conduct; and (g) failing to file an appeal challenging the application of the two-level firearms enhancement based on dismissed conduct, as per Petitioner's request.  (See generally doc. no. 2.)  Petitioner also claims that the district court committed constitutional error by applying the two-point firearms enhancement based on dismissed conduct.  (Id.)

**C.    Evidentiary Hearing**

On August 3, 2010, the Court held an evidentiary hearing to resolve the issue of whether Petitioner requested Mr. Hawk to file a notice of appeal.  (See doc. nos. 15, 16.) The Court heard testimony from Petitioner and Mr. Hawk.[6]

At the evidentiary hearing, Petitioner testified that he believed that he was pleading guilty to the drug charge and that the two other charges filed against him would be dismissed.

---

[6]The Court appointed Mr. Michael C. Garrett, for the limited purpose of representing Petitioner at the hearing.  (Doc. no. 13.)

(FTR 2:18:12.)[7] He acknowledged that he and Mr. Hawk reviewed the PSI approximately three weeks before the sentencing. (FTR 2:18:35.) While they were reviewing the PSI, Petitioner claims that he was surprised that the gun charge - a charge that was dismissed pursuant to the plea agreement – was being used to enhance his sentence by two points. (FTR 2:19:02.) Petitioner testified that he and Mr. Hawk did not discuss the fact that his sentence would be enhanced based on this gun charge. (FTR 2:20:20.) However, Petitioner then testified that Mr. Hawk stated that he would take care of the two point enhancement at sentencing. (FTR 2:19:50, 2:20:45.)

Petitioner testified that the two point enhancement was addressed at sentencing by Mr. Hawk after Petitioner prompted him. (FTR 2:20:18, 2:21:15.) Nonetheless, the enhancement was used for calculating his sentence. Petitioner next testified that after Judge Hall imposed his sentence, he was taken to the holding cell. (FTR 2:22:15.) Petitioner acknowledged that Mr. Hawk went to the holding cell where they met for approximately ten minutes to discuss Petitioner's options. (FTR 2:22:36.) Mr. Hawk brought up the fact hat Petitioner had a right to appeal, and they had a conversation about whether to appeal. (FTR 2:22:45.) Petitioner stated that during the meeting in the holding cell, he asked Mr. Hawk to appeal his case; Petitioner maintains that Mr. Hawk responded, "Okay, I'm still working for you." (FTR 2:22:50.) Petitioner states that at no point did he change his mind or tell Mr. Hawk he did not want to file an appeal. (FTR 2:23:00.)

---

[7]Although a transcript of the August 3, 2010 hearing has not been prepared, the Court was able to review the proceedings on the Court's recording system, For the Record ("FTR").

Petitioner testified that Ms. Lakisha McCullers called Mr. Hawk, sometime after the sentencing to inquire as to the status of the appeal, and Mr. Hawk purportedly told her that he was working on it.[8] (FTR 2:23:29, 2:23:55.) Petitioner noted that he never received any indication that an appeal had been filed on his behalf. (FTR 2:23:17.) Finally, Petitioner also acknowledged that Mr. Hawk discussed issues related to assisting the government in other criminal matters pursuant to the cooperation clause in the plea agreement. (FTR 2:30:00.)

Next, the Court heard testimony from Mr. Hawk. He testified that he has been an attorney since 1984. (FTR 2:35:42.) He stated that approximately one-fifth of his practice is in federal court, and he has filed approximately eight to ten appeals with the Eleventh Circuit. (FTR 2:36:10, 2:36:35.) Thus, Mr. Hawk stated that he is familiar with the procedure of filing appeals. (FTR 2:36:40.) Additionally, Mr. Hawk testified that he is very familiar with the Sentencing Guidelines and is very familiar with PSIs. (FTR 2:39:00.) He testified that it is his practice to review a PSI line by line with a defendant, and then paragraph by paragraph to see if the defendant has any problems with it. (FTR 2:39:25.) Mr. Hawk testified that when he reviewed the PSI with Petitioner, he did not recall that Petitioner had any issues with it. (FTR 2:39:45.) Mr. Hawk testified that he reviewed the PSI with Petitioner line by line, as per his practice. (FTR 2:49:08.) Mr. Hawk testified that he was not surprised by anything in the PSI. (FTR 2:49:22.) Mr. Hawk testified that the PSI did not address anything that he and Petitioner had not already discussed. (FTR 2:49:35.) When he

---

[8]Ms. McCullers is the mother of one of Petitioner's children, and as discussed *infra*, was the person paying Mr. Hawk for Petitioner's legal representation.

was asked specifically about the two point enhancement, Mr. Hawk stated that he was not surprised by the enhancement because he was aware that the enhancement was going to "show up." (FTR 2:49:50.) Furthermore, he testified that there was nothing in his notes about the two point enhancement whatsoever.[9] (FTR 2:50:50.) Mr. Hawk testified that, in fact, before Petitioner entered into the plea agreement, Mr. Hawk told Petitioner about the enhancement. (FTR 2:50:20.) Mr. Hawk testified that he explained to Petitioner that although they were "getting rid" of the gun charge, it would still be in PSI in the form of a two point enhancement. (FTR 2:50:40.)

Concerning Petitioner's sentence, Mr. Hawk remembered that Petitioner was given six months above the top end of the Sentencing Guidelines range. (FTR 2:40:35.) Additionally, Mr. Hawk testified that the plea agreement had the appeal waiver, but because of the upward departure, he had the right to appeal. (FTR 2:41:05.)

Mr. Hawk also testified that he spoke to Petitioner after sentencing regarding whether he wanted to appeal. (FTR 2:41:40.) Mr. Hawk stated that he and Petitioner discussed the aspects of case and what Petitioner's chances were on appeal. (FTR 2:42:00.) Mr. Hawk explained that he believed that because Petitioner had a sawed-off shot gun, bullet proof vest, two pistols, and government marked money, Mr. Hawk felt that an appeal would not bring Petitioner any relief. (Id.) Nonetheless, according to Mr. Hawk, he explained that if

---

[9]Mr. Hawk testified that he had notes indicating that Petitioner had concerns about the presentation in the PSI of incidents prior to the activities at issue in this case. (FTR 2:49:49 - 2:50:03). Thus, the fact that Mr. Hawk had nothing in his notes about the two point enhancement indicates that Petitioner expressed no disagreement with it. Stated otherwise, had Petitioner expressed concern about the enhancement, there would have been a notation in Mr. Hawk's file.

Petitioner wanted to appeal, Mr. Hawk would file an appeal. (FTR 2:42:50.) Mr. Hawk testified that Petitioner expressed concern that Lakisha McCullers, the mother of one of his children and the individual paying for his representation, would be spending money on an appeal rather than using the money to support his child. (FTR 2:42:53, 2:56:00.) Therefore, Petitioner told Mr. Hawk that an appeal was "not worth it." (FTR 2:56:14.) Petitioner never directed him to file an appeal. (FTR 2:43:28.) Mr. Hawk stated that if Petitioner had wanted an appeal, he would have been "duty bound" to file an appeal; he would not have had a choice. (FTR 2:43:38.) In fact, Mr. Hawk testified that he has previously filed appeals for clients when he did not think they had a chance. (FTR 2:43:45.) Mr. Hawk then reiterated that he knows that he is "duty bound" to raise any and all possible claims, even if he does not think they are plausible. (FTR 2:44:00.) However, Petitioner simply did not want to file an appeal, and never made any such request of Mr. Hawk.

Mr. Hawk also testified that Ms. McCullers did not call him after Petitioner's sentencing to inquire as to Petitioner's appeal. (FTR. 2:55:05.) Furthermore, he testified that there would not have been a reason for Ms. McCullers to call because "everybody was clear that we weren't going to appeal it after he had the discussion with [Petitioner.]" (FTR 2:55:20.) Lastly, Mr. Hawk confirmed that he did tell Petitioner on the day of his sentencing that "I'm still working for you," but he explained that the statement related to a cooperation clause in his plea agreement, and that if he decided to cooperate with the government, then Mr. Hawk would help him with that. (FTR 2:56:35.)

Having set forth the relevant background and the factual contentions at issue, the Court resolves the matter as follows.

## II. DISCUSSION

**A.      Effect of Waiver Contained in the Plea Agreement**

**1.      Knowing And Voluntary Nature Of Waiver**

Petitioner claims in his § 2255 motion that he did not knowingly and voluntarily

waive his appeal rights because neither counsel nor the Court explained its significance to

him.  It is well-settled that a waiver of appeal[10] provision is enforceable if the waiver is

knowing and voluntary.  United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001);

United States v. Bushert, 997 F.2d 1343, 1350 (11th Cir. 1993).  "To establish the waiver's

validity, the government must show either that (1) the district court specifically questioned

the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from

the record that the defendant fully understood the significance of the waiver."  Weaver, 275

F.3d at 1333.

Thus, if the government meets the burden in the instant case, the appeal waiver

provisions of the plea agreement are enforceable.  See United States v. Pease, 240 F.3d 938,

942 (11th Cir. 2001) (*per curiam*) (enforcing waiver provision where defendant was

specifically questioned during plea proceedings about waiver); United States v. Howle, 166

F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1146-

47 (11th Cir. 1997).

---

[10]By "appeal," the Court here refers to the right to "appeal or contest, directly or collaterally, [a] sentence."  United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993). Moreover, case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings.  Id.; see also Vaca-Ortiz v. United States, 320 F. Supp.2d 1362, 1365-67 (N.D. Ga. 2004).

Here, the plea agreement signed and verified by Petitioner fully set forth that, as a condition of his guilty plea, he was waiving any right to collateral attack of his sentence or the knowing and voluntary nature of his guilty plea. See CR 108-054, doc. no. 42, pp. 2-3. Judge Hall thoroughly went over Petitioner's plea agreement and specifically reviewed the waiver provisions at the Rule 11 colloquy. After Judge Hall concluded his review of the plea agreement, Petitioner acknowledged that he understood and agreed with the terms of the plea agreement as explained by Judge Hall. Rule 11 Tr., p. 18.

Thus, the record before the Court demonstrates that the appeal waiver was knowing and voluntary. While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Thus, the Court concludes that the appeal waiver is valid. Of course, the Court is aware that Petitioner has also challenged the assistance of counsel in entering into the plea agreement, a claim which, if found to have merit, would cast doubt on whether Petitioner validly waived his right to collaterally attack his sentence. However, as discussed below, the Court determines that this claim lacks merit, thus supporting the conclusion that Petitioner validly waived his right to a collateral post-conviction attack of his sentence.[11]

---

[11]The fact that Petitioner has attempted to challenge his sentence – as to the application of the two point enhancement – under the guise of an ineffective assistance of counsel claim does not change this result. See Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005) ("[A] valid sentence appeal-waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing." (citations omitted)).

## 2. Ineffective Assistance Of Counsel Claims Not Barred By Waiver

Notwithstanding the above analysis, some claims of ineffective assistance of counsel can survive a valid waiver. In particular, the Eleventh Circuit recognizes that "there may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement." Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005); see also Vaca-Ortiz, 320 F.Supp.2d at 1365 ("[T]he court notes that a criminal defendant could not waive the right to bring a claim for ineffective assistance of counsel in which he alleges ineffectiveness at the time he was entering the plea or ineffectiveness related to advice he received regarding the waiver."). As it appears that Petitioner is challenging his counsel's performance as it relates to the validity of his plea or waiver (inasmuch as he alleges that his guilty plea is invalid because "same was entered unknowingly, involuntarily, unintelligently and without the advice of competent counsel" (doc. no. 2, p. 4)), such a challenge is not barred by the provision in the plea agreement waiving his appeal rights.

That having been said, ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard to Petitioner. Massaro v. United States, 538 U.S. 500, 505 (2003). First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Id.; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A

12

petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In the context of a guilty plea, the Court must normally inquire as to whether counsel's performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion--though the presumption is not insurmountable--is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

Petitioner argues that his counsel (and the sentencing court) failed to offer him advice and counsel about the consequences of a guilty plea and failed to object to the two point enhancement resulting from the dismissed gun charge. However, the guilty plea transcripts confirm that Petitioner told Judge Hall that he had had enough time to discuss the case and to prepare his case with his counsel. Rule 11 Tr., p. 11. The guilty plea transcripts also confirm that Petitioner agreed that he was satisfied with his counsel's preparation and handling of the case. Id. In addition, Judge Hall thoroughly reviewed the plea agreement, as well as the rights that would be waived by a guilty plea. Id. at 11-20. Judge Hall also specifically informed Petitioner about the penalty for the charge to which he was about to plead guilty. Id. at 10. Judge Hall also verified that every promise made to Petitioner concerning his guilty plea had been included in the guilty plea. Id. at 16. Additionally, Judge Hall explained that it was possible that, based on factors that he had previously explained, that he may, in fact, impose a penalty that was below or above the Sentencing Guidelines range. Id. at 15.

Thus, prior to Petitioner entering his guilty plea, he was specifically told about the information that Petitioner now claims his counsel failed to convey, and Judge Hall confirmed that Petitioner, having all of this information in mind, wanted to proceed with his guilty plea. Id., doc. no. 42. Indeed, when Judge Hall asked Petitioner if he understood the rights and procedures that he would be waiving or giving up by pleading guilty, Petitioner responded, "Yes, Sir."[12] Rule 11 Tr., p. 18. Moreover, Petitioner also attested with his signature to the plea agreement that he understood the charges and penalties, that with the advice of counsel he had weighed the relative benefits of a trial versus a guilty plea. CR 108-054, doc. no. 42. Petitioner's belated, self-serving allegations about a lack of information simply do not ring true in light of the record evidence.

As previously noted, "[s]olemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 74. Furthermore, even if counsel failed to adequately explain the plea agreement to Petitioner, which he did not, Judge Hall did so, and again, no prejudice inured to Petitioner. In sum, Petitioner has not established that he was prejudiced in any way by his counsel's performance, and he is not entitled to relief on these claims.

---

[12]Notably, Judge Hall also explained:

The bottom line . . . is that if you plead guilty today and I accept your plea, there will be no trial. That will be the end of your criminal case, except for your sentencing, which will occur at a later date. Do you understand that?

Rule 11 Tr., p. 10. Petitioner responded, "Yes, Sir." Id.

**B.     Ineffective Assistance of Counsel Claim Regarding Whether Petitioner Requested An Appeal**

The Court turns next to Petitioner's allegation that after sentencing, while he was in the holding cell, he requested Mr. Hawk to file an appeal on his behalf. (Doc. no. 1, p. 4). Petitioner asserts that Mr. Hawk failed to file a notice of appeal despite being given explicit instructions from Petitioner to do so. Before addressing this claim, the Court will explain the applicable principles of law.

Cases in which a criminal defendant explicitly instructs his attorney to file a notice of appeal are subject to a bright-line rule. "[A]n attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal." Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995) (*per curiam*); see also Roe v. Flores-Ortega, 528 U.S. 470, 477-78 (2000) (holding that it is professionally unreasonable for an attorney to fail to follow a defendant's express instructions with respect to an appeal). Thus, if the Court determines that Mr. Hawk failed to honor a request to file a notice of appeal, it must grant Petitioner's § 2255 motion on that ground.

**1.     No Request for Appeal Made**

In this case, the threshold issue relates to credibility. Particularly, the Court must weigh the testimony of Mr. Hawk against the self-serving allegations of Petitioner. Generally, when the testimony conflicts, the Court, as fact finder and "ultimate judge of the credibility and demeanor of witnesses," must believe one witness over the other. McCoy v. Newsome, 953 F.2d 1252, 1262 (11th Cir. 1992) (*per curiam*). More specifically, the

determination of the credibility of a testifying attorney during an evidentiary hearing on a claim of ineffective assistance of counsel is a matter within the Court's good discretion. See Carr v. Schofield, 364 F.3d 1246, 1264-65 (11th Cir. 2004).

Here, the Court specifically credits the testimony of Mr. Hawk over that of Petitioner. Mr. Hawk, who has practiced as a criminal defense attorney for over twenty years, is well-known to the Court and has demonstrated himself to be an ethical and zealous advocate for his clients. Any notion that Mr. Hawk would ignore a specific request that he file a notice of appeal on Petitioner's behalf and then lie to the Court about this circumstance is incredible.

At the evidentiary hearing, Mr. Hawk consistently maintained that he never received any communications from Petitioner instructing him to file an appeal. Mr. Hawk also testified that Petitioner was made aware of his right to appeal and had ample opportunity to request that a notice of appeal be filed before the time in which to appeal expired. Mr. Hawk also gave an account of the substance of his communications with Petitioner in the holding cell. Mr. Hawk testified, and Petitioner acknowledged, that they discussed that Petitioner could appeal his case, but the odds were not good. Mr. Hawk explained to Petitioner that the fact that he had the sawed-off shot gun, a bullet proof vest, the marked government money that was recovered, and the two pistols, in combination with his criminal history, did not weigh in Petitioner's favor for getting any relief on appeal. However, Mr. Hawk told Petitioner that if he wanted to appeal, he would file an appeal on Petitioner's behalf.

Mr. Hawk then testified that Petitioner had some concern that Ms. McCullers would be spending money on the appeal rather than using it to support their child. According to Mr.

17

Hawk, Petitioner decided that it was not "worth it" to file an appeal. At no point in the conversation did Petitioner request that an appeal be filed on his behalf.[13]

As previously noted, Mr. Hawk testified that if Petitioner had requested an appeal, he would have been duty bound to file the appeal. Indeed, Mr. Hawk acknowledged that he has in other cases filed appeals even if he did not believe they were meritorious. (FTR 2:43:40.) Furthermore, to the extent Petitioner now asserts he was "surprised" by the two point enhancement, Mr. Hawk's testimony clearly refutes this contention. (FTR 2:49:33.) Indeed, Mr. Hawk testified that he had, prior to entering the guilty plea, discussed the fact that Petitioner's sentence would be enhanced by the gun charge. When questioned by Mr. Garrett whether he (Mr. Hawk) was surprised by the enhancement, he said he was not, that he knows to expect this and had discussed this fact with Petitioner. Mr. Hawk's statements are supported by the fact that 1) his testimony that he always expects this enhancement and does not like it, and 2) more importantly, there were no notations on Mr. Hawk's copy of the PSI indicating there was an issue with this enhancement. The only notations on the PSI were regarding the way the "prior incidents were raised in the report." To be clear, Mr. Hawk reiterated that he was aware the gun charge, in the form of an enhancement, was going to "show up" at sentencing; he stated, "You know that's coming."

---

[13]Petitioner's allegation that Ms. McCullers, sometime after sentencing, called Mr. Hawk to check on the status of the appeal is undermined by Mr. Hawk's statement that he never received a call from her. Indeed, Mr. Hawk testified that such a call would be unnecessary because it was clear to all parties involved that Petitioner did not want to file an appeal. The Court also notes that Petitioner did not have any evidence to substantiate his statement concerning Ms. McCullers in that Ms. McCullers neither testified at the evidentiary hearing nor provided an affidavit in support of Petitioner's claims concerning her alleged contact with Mr. Hawk.

Notably, Mr. Hawk acknowledged that he and Petitioner were surprised that Petitioner was sentenced above the Sentencing Guidelines range. However, Mr. Hawk's testimony left no doubt that Petitioner, at that time, did not want to file an appeal. Furthermore, as to whether Ms. McCullers called him to inquire as to the status of the appeal, Mr. Hawk testified that there was no need for such a call because everybody was clear that there would be no appeal. Finally, Mr. Hawk also acknowledged that he did tell Petitioner that, "I'm still working for you," after their meeting in the holding cell. Mr. Hawk, however, clarified that he made that statement in response to Petitioner's questions concerning the cooperation clause in his plea agreement. If Petitioner decided to cooperate with the government, then Mr. Hawk would be there to do something for Petitioner on that issue.

As such, Petitioner is left with his unsupported assertions that he requested Mr. Hawk to file an appeal and that Mr. Hawk told Ms. McCullers that he was working on it. Petitioner's claims are severely undermined by Mr. Hawk's credible testimony that after discussing with Petitioner the merits of an appeal, Petitioner believed the money that would go towards filing his appeal would be better served in supporting his child. Additionally, Petitioner's assertions were undermined by Mr. Hawk's testimony that Petitioner was aware, prior to the plea agreement, that the gun charge would appear in the PSI in the form of an enhancement. Finally, Mr. Hawk unequivocally testified that Ms. McCullers never called him; indeed, such a telephone call would be unnecessary because everyone involved was aware that Petitioner did not want to file an appeal.

In light of these considerations, and the noted contradictions between the allegations set forth in Petitioner's § 2255 motion and the testimony presented at the hearing, the Court **FINDS** that Petitioner never requested that Mr. Hawk file an appeal.

### 2.    Adequate Consultation

Even though the Court finds that Mr. Hawk was not instructed to file an appeal on behalf of Petitioner, the Court's inquiry does not end there. Indeed, the Eleventh Circuit recently held that even in cases where a defendant does not specifically instruct his counsel to file an appeal, the Court "must still determine 'whether counsel in fact consulted with the defendant about an appeal.'" Thompson v. United States, 504 F.3d 1203, 1206 (11th Cir. 2007) (quoting Flores-Ortega, 528 U.S. at 478). "[A]dequate consultation requires informing a client about his right to an appeal, advising the client about the advantages and disadvantages of taking an appeal, *and* making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal." Id. (citing Frazer v. South Carolina, 430 F.3d 696, 711 (4th Cir. 2005)).

Here, Mr. Hawk clearly satisfied the consultation requirements of Thompson in that he informed Petitioner of the right to appeal, advised him of the advantages and disadvantages of an appeal, and made a reasonable effort to determine if Petitioner wanted to pursue an appeal. At the evidentiary hearing, Mr. Hawk testified that he specifically spoke with Petitioner after sentencing about whether he wanted to file an appeal, and specifically discussed various aspects of the case and Petitioner's chances on appeal.[14] (FTR 2:41:40 -

---

[14] In particular, Mr. Hawk advised that an appeal was not likely to result in relief because of Petitioner's prior criminal history and because Petitioner had a sawed-off shot gun, bullet proof vest, two pistols, and government marked money. (FTR 2:42:00 - 2:43:00.)

2:43:00.) Indeed, at the evidentiary hearing, Petitioner acknowledged that Mr. Hawk met with him after sentencing to discuss whether he wanted to appeal.[15]  (FTR 2:22:45.) Although Mr. Hawk advised that he did not see much chance of success in an appeal, he told Petitioner that he would file an appeal if Petitioner so desired.  (FTR 2:42:50.) After discussing Petitioner's options, including discussing the financial strain that would be placed on the mother of Petitioner's child who was paying Mr. Hawk (FTR 2:42:53 - 2:43:16), the decision was made not to file an appeal (FTR 2:43:25.) In light of the credible testimony of Mr. Hawk, the Court **FINDS** that Mr. Hawk appropriately consulted with Petitioner to determine whether Petitioner wanted to file an appeal.

In sum, the Court finds that Petitioner is not entitled to relief on his claim that Mr. Hawk failed to file an appeal on Petitioner' behalf.

---

[15]As discussed in detail above, the Court has credited Mr. Hawk's testimony that Petitioner did not ask him to file an appeal over the testimony of Petitioner that he did ask for an appeal.  However, even if the Court were to credit Petitioner's testimony that he asked for an appeal, such a discussion with Mr. Hawk would necessarily have satisfied the requirement of Thompson that Mr. Hawk make a reasonable effort to determine if Petitioner wanted an appeal.  Of course, as detailed above, Mr. Hawk did make a reasonable effort to determine if Petitioner wanted to appeal, and that effort resulted in the conclusion that Petitioner did not want an appeal filed.

### III. CONCLUSION

For the reasons set forth above, the Court finds that Petitioner is not entitled to relief under § 2255. The Court therefore **REPORTS** and **RECOMMENDS** that the § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this _15t_ day of September, 2010, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE